## MOSES MILLER *v.* WILLIAM CHARMAN.

### EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED MAY 2, 1910.                    DECIDED MAY 6, 1910.

### HARTWELL, C.J., PERRY AND DE BOLT, JJ.

*Evidence—supports findings.*

There was evidence in this case to sustain the findings of the trial court.

Miller v. Charman, 20 Haw. 165.

OPINION OF THE COURT BY PERRY, J.

This is an action to quiet title. George Charman died leaving a will executed June 27, 1887, by which he devised inter alia to his wife Mary Charman for life, remainder in fee to his grandson Moses Miller, "the store and land now leased to L. Turner," and to his son, William Charman, for life, remainder in fee to his grandson Moses Miller "my house and lot in Koloa now occupied by him" (William Charman) "as a dwelling house." The plaintiff is the remainderman named in these clauses and the defendant the life tenant in the second clause. The controversy between the parties is as to the boundary between the two pieces of land.

June 11, 1885, George Charman executed a lease to one Apau for the term of fifteen years, rent free for the first five years, in which instrument the only language used by way of description of the demised property is as follows: "That the said party of the first part for and in consideration of a certain piece of land in the corner of William Charman's land where his store now stand from the wall to the post and railin fence in wide forty feed herein after mentioned, has granted, Leased and demised to the party of the second part." Nothing was "hereinafter mentioned" which can throw light upon the location or the extent of the demised property. Apau subsequently became bankrupt and his assignees in bankruptcy assigned the lease to one L. Turner, George Charman's written consent to the assignment being dated May 28, 1886. March 19, 1887, George Charman by written instrument leased to L. Turner for the term of fifteen years "a piece of land situated back of his store at Koloa adjoining lot on which said store is built" and more particularly described as follows: "Commencing at stone wall on the makai side of lot it runs eighty-eight (88) ft. along said wall, measuring from back of building from thence to mauka fence a distance of seventy (70) ft. at right angles to said wall, from this point eighty

(80) ft. along fence to back of building, and from thence seventy-nine (79) ft. to starting point."

The parties agreed at the trial that the description in the Apau lease is ambiguous and that extrinsic evidence was admissible to show the location and the extent of the land demised and such evidence was freely admitted tending to show the location of walls, fences and other monuments on the land and vicinity and all other surrounding circumstances at the date of the leases and of the will, and also the practical construction of the parties at and shortly after that time. The circuit judge, jury having been waived, found that the description included a lot extending from the corner of the Charman land and running southerly about forty feeet and easterly about eighty feet to certain points definitely disclosed in his opinion. Defendant excepted.

The only exceptions are to the decision and to the formal judgment entered in pursuance of it.

The question before the trial judge was as to how much land was included in the description of the Apau lease. The question now before this court is simply whether there was evidence sufficient to support the findings made. We are not at liberty to consider and weigh the evidence and to determine de novo whether the land now in dispute was or was not demised to Apau and held by his successor under the assigned lease at the date of the will. In view of the admitted necessity for extrinsic evidence the question became one largely of fact and the decision cannot be disturbed, for from the evidence a reasonable person could draw the inference and reach the conclusions of fact which were drawn and reached in the court below.

It was conceded at the trial that "the store and land now leased to L. Turner" included the lot known as the pasture described in the lease of March 19, 1887, to L. Turner, and also a piece lying between the pasture and the road and in the cor-

ner of the Charman land, at least forty feet long by forty feet wide. The precise dispute was as to the remaining portion, also about 40x40 feet, adjoining the corner piece just mentioned and extending to the easterly line of the pasture.

Three possibilities of the construction of the description have been suggested: (a) That the land extended from the wall to the post and railing fence and that the distance between these two monuments was forty feet; (b) that the land was forty feet long by forty feet wide; and (c) that in length it extended from the wall to the fence and, in width measured forty feet. The first of these would seem to be the least deserving of consideration for it would leave the description wholly without a statement of one of the dimensions. Between the second and third the trial court had its choice upon the evidence, and the third as a pure matter of construction was at least as plausible as the second.

While there was some evidence to the contrary from which, perhaps, the trial court could have found in favor of the defendant, there was ample evidence to support the following findings: that at the date of each of the leases and of the will a stone wall known as the "K. P. wall" ran along the westerly boundary of the Charman property from its westerly corner at the road to at least the rear end of the land covered by the lease of March 19, 1887; that along the opposite or easterly side of the lot last referred to was a post and railing fence, and from the end of that fence to a large tree near the government road and substantially in continuation of the line of the fence stood a stone wall; that the northerly end of this post and railing fence was at the line of the rear of Apau's building; that during Apau's possession under his lease he had and occupied a store and dwelling house, all in one building and additions thereto, extending from the K. P. wall eastwards to within twelve or fifteen feet of the easterly wall above mentioned and southerly to the line of the pasture later leased to L. Turner;

that L. Turner took possession of the same property occupied by Apau including all of the buildings and also used as a roadway and as a place for storing his carriage the strip about twelve to fifteen feet wide adjoining the easterly wall; that in all respects both Apau and L. Turner and also F. Turner, who succeeded to the possession by transfer from L. Turner, dealt with the whole of the land from the K. P. wall to the easterly wall and from the pasture lot to the road as though they were entitled thereto under the Apau lease and its assignments; that George Charman, the lessor and testator, was on the premises very frequently and well knew of the extent of the occupation by Apau and L. Turner and F. Turner; that George Charman at no time disputed the possession or title of any one of these three tenants, and that William Charman was not at the date of the will in occupation of any part of the land west of the easterly wall.

The circuit judge seems to have been greatly influenced in arriving at his conclusion by the fact that under the lease to L. Turner the pasture lot was made to extend from the K. P. wall to the easterly wall and the fence in continuation thereof, and by the fact that the third course of its description extended "to back of building," from which he inferred a rightful occupation at that time by L. Turner as far as the easterly wall and fence. Any reasonable person might well have been influenced by this consideration, and yet the circuit judge did not base his decision wholly upon it. He also relied, as his written opinion shows, upon other evidence in the case and may well have found that the post and railing fence on the easterly side of the pasture lot was the "post and railin fence" mentioned in the Apau lease, that the K. P. wall was the wall there referred to and that the width of forty feet was intended to denote the depth of the lot from its frontage on or near the street.

Under the circumstances the findings and judgment cannot be set aside.

The exceptions are overruled.

L. J. Warren (Smith, Warren & Hemenway on the brief) for plaintiff.

J. Lightfoot for defendant.