WALTER BOTEILHO, Plaintiff-Appellant, *v.* JANET BOTEILHO, EDWARD BOTEILHO, ALFRED BOTEILHO and NELSON BOTEILHO, Defendants-Appellees

NO. 5780

MAY 17, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR, and KIDWELL, JJ.

OPINION OF THE COURT BY MENOR, J.

This action is in the nature of a suit for specific performance of an alleged oral agreement to convey real and personal property to the plaintiff. The cause was tried by the court without a jury. The plaintiff appeals from the judgment in favor of the defendants.

The plaintiff-appellant, Walter Boteilho, is the son of Janet Boteilho, one of the defendant-appellees herein. The other defendant-appellees are Edward Boteilho, Alfred Boteilho, and Nelson Boteilho, brothers of the appellant and sons of Janet Boteilho.

We address ourselves to two principal issues in this appeal. First, whether the trial court erred in holding that the appellant had failed to prove that a valid enforceable contract existed between himself and appellee Janet Boteilho. Second, whether the trial court erred in finding that there had been no effective delivery of the June 23, 1972 deed from the appellee Janet Boteilho to the appellant.

I

The appellant, Walter Boteilho, alleged in his complaint that his mother, Janet Boteilho, had promised that if he would help her in operating her ranch in the Kula area on the Island of Maui she would, at the time of her death, leave him an equal share of her lands and, in addition, all of her cattle. He further alleged that in reliance upon her promise, he did assist his mother with her ranching operations; but that

42

sometime in 1969, Janet Boteilho began to dispose of her lands and her cattle, and made no effort in the process to comply with her earlier promise to the appellant.

The trial court found that "this promise, if indeed made, was vague and there are no other details disclosed," and concluded that "[t]here is insufficient evidence to show an effective oral contract between Janet and Walter Boteilho for him to receive any portion of her lands in return for his managing the ranch from 1952 to 1972."

To be enforceable a contract must be certain and definite as to its essential terms. *Francone v. McClay,* 41 Haw. 72 (1955). A party seeking to establish a parol contract to convey real property must prove its existence and its terms by clear and convincing evidence. *Coelho v. Fernandez,* 46 Haw. 578, 384 P.2d 527 (1963); *Opunui v. Kauhi,* 8 Haw. 649 (1882). Part performance to remove it from the operation of the statute of frauds requires a similar quantum and quality of proof. *Doms v. Barrow,* 29 Wash.2d 366, 187 P.2d 627 (1947). The trial court concluded that the appellant had failed to meet his burden of providing the existence and terms of the alleged oral agreement. We agree. The finding of fact by the trial court that Janet Boteilho's "promise, if indeed made, was vague" and lacking in essential details was not clearly erroneous. H.R.C.P. Rule 52(a).

II

In 1969, attorney Wendell F. Crockett prepared a series of deeds for Janet Boteilho whereby she conveyed various parcels of her property to her children, while reserving to herself a life estate therein. One of these was a deed to the appellant conveying to him Lots 3-A, 3-B, and 3-C, being portions of Lot B, Grant 2817 and Grant 965, Boteilho Estate 3, situated at Omaopio, Kula, Maui, Hawaii. These documents were executed by Mrs. Boteilho on November 24, 1969. They were retained by attorney Crockett and, pursuant to instructions from the appellant who was then acting in behalf of his mother, they were never recorded.

Early in 1972, the appellant's brother, Nelson Boteilho, who had returned to Maui the previous year, visited Mr. Crockett's office to review these 1969 deeds. Thereafter, a family conference was convened at which the appellant, his brothers, and his sister were present. At that meeting it was decided that in order to avoid estate taxes, Janet Boteilho should execute new deeds without reserving a life estate to herself. Accordingly, sometime in May, 1972, Nelson Boteilho, on behalf of his mother, instructed attorney Crockett to prepare a new series of deeds without the reservations. Mr. Crockett prepared the documents as directed, and these were executed by Janet Boteilho on June 23, 1972. The newly executed deed to the appellant conveyed to him the same Lots 3-A, 3-B, and 3-C, but without the reservation of a life estate to his mother.

The appellant was not present when Janet Boteilho executed these various documents. Subsequently, however, on June 27, 1972, Mr. Crockett wrote to the appellant advising him that his mother had signed a deed conveying to him Lots 3-A, 3-B, and 3-C. None of the deeds in this series of deeds executed by grantor on June 23, 1972, were ever recorded. As of the time of trial the deed to the appellant had not been located. Attorney Crockett explained that he had received later instructions from Nelson Boteilho to prepare still another series of deeds covering the same parcels of land described in the deeds of June 23, 1972, and that he had probably discarded the appellant's deed after he had scribbled certain changes on it preparatory to drafting the new series of deeds. The new deed to the appellant conveyed to him Lots 3-A and 3-B, but not Lot 3-C. There is no indication in the record that Nelson Boteilho was expressly authorized by Janet Boteilho to arrange for the modification; nevertheless, the modified deed to appellant was in fact executed by Janet Boteilho on July 31, 1972. It, too, was never recorded. Still later, this document was also partially defaced by attorney Crockett, and another deed to the appellant was drawn to replace it. This last deed merely changed the lot designations from "3-A and 3-B" to "1 and 2." This instrument was never signed by Janet Boteilho.

The appellant contends that the deed of June 23, 1972, effectively conveyed to him Lots 3-A, 3-B, and 3-C, and that any attempted modification of the conveyance thereafter, or the loss or destruction of the document, could not alter the effect of the transfer.

The delivery of a deed is essential to its validity, for it takes effect only from the time of its delivery. *Hewahewa v. Lalakea*, 27 Haw. 544 (1923); *Victor v. Pili*, 26 Haw. 658 (1922). It is delivery which gives the instrument force and effect. The issue, therefore, is whether there was a delivery to the appellant, as grantee, of the deed of June 23, 1972. The trial court found that "there was no effective, legal delivery of any of the deeds that defendant Janet executed in favor of the plaintiff [appellant] Walter." We hold that under the circumstances of this case, the trial court erred.

The trial court apparently considered the absence of recordation in this case to be the determinative consideration.[1] In its findings of fact the trial court noted:

> Attorney Crockett drafted four successive deeds for grantor Janet to grantee Walter, each time making slight modifications. Janet executed the first three of these deeds but not the last one. It is apparent that attorney Crockett considered himself as Janet's attorney; that he was following Janet's instructions, as conveyed to him by her agent; and that he was not to record any deed until so instructed.

However, the finding that Mr. Crockett "was not to record any deed until so instructed" is not supported by the evidence and is clearly erroneous. The three principals most directly involved with these 1972 documents had no clear recollection, at time of trial, of the relevant circumstances surrounding these transactions. Mr. Crockett was uncertain in his testimony. His only contacts with Janet Boteilho had been the occasions when she visited his office to execute the various documents. Requests for their preparation were

---

[1] The fact of recordation of an instrument constitutes prima facie evidence of delivery, although it is not conclusive evidence thereof. Makainai v. Lalakea, 25 Haw. 470 (1920); Blachowski v. Blachowski, 135 N.J.Eq. 425, 39 A.2d 94 (1944).

either made by the appellant (in 1969) or by Nelson Boteilho (in 1972). Nelson Boteilho, who was present when it was signed by his mother, had no clear recollection of the June 23, 1972 deed, and Janet Boteilho insisted that she had made no conveyances to the appellant in 1972. The only possible support for this particular finding was Mr. Crockett's responses to the following questions put to him by the appellees' counsel:

Q   What about the deeds you drew in 1972 at behest of Nelson Boteilho? You retained those, did you not?

A   Yes, I retained those because the main, oh, they were retained — was after we prepared those documents, why, Nelson discovered that they hadn't gotten the proper authorization for the subdivision. And we had to hold it up for quite awhile until he did get the authorization for the subdivision. And in doing that, why, new maps had to be prepared, and which changed the designation of the lots. So that's why the deeds that were drawn up in the first '72 deeds were not correct in — in the fact that they did not designate the lots according to the new maps which were prepared. So that's why the '72 deeds were never, uh, that is, retained and never delivered.

Q   Well, whose instructions were you waiting for before you would do something with those documents?

A   Well, some authorization from Mrs. Boteilho.

This explanation is not supported by the record. It was not until September 6, 1972, that Nelson Boteilho was officially notified of the technical requirements for final approval. More significantly, the deed drafted by Mr. Crockett and executed by Janet Boteilho on July 31, 1972, contained the same letter designations instead of the numbered lot designations required by the Maui County Planning Department, so that it is obvious that it could not have been until sometime in August or September that Mr. Crockett was made aware of the requirement that the lots had to be designated numerically instead of alphabetically. In this

connection, no claim is made that these "paper changes" had the effect of invalidating the June 23, 1972, conveyance.

Mr. Crockett admittedly was Janet Boteilho's attorney in the preparation of the deed, and his possession of the document, without more, would have constituted possession of the grantor. *Brown v. Brown*, 192 Ga. 852, 16 S.E.2d 853 (1941); *Blachowski v. Blachowski, supra,* note 1. But where the grantor intends that the deed should become presently effective to convey title, and by her words or conduct has relinquished all right of control over the document, reserving no right to recall or to alter it, delivery is deemed to be complete. A manual transfer of the document to the grantee, while the best evidence of delivery, is not an absolute requirement. Delivery may be actual or constructive. *Hewahewa v. Lalakea, supra.* In that case this court said:

> "A deed in order to be effectual as a transfer of title to land must be delivered. Delivery may be made by words with act, by an unequivocal act only, or by both combined. In order to be a valid delivery it must appear that the grantor parted with all dominion and control over the deed. *Porter v. Woodhouse*, 59 Conn. 568, 574; *Shults v. Shults*, 159 Ill. 654, 660. No particular form of delivery is essential. The question of delivery is one of intention. Whether such intent actually existed is a question of fact to be determined by the circumstances of each individual case. What amounts to a delivery is a question of law, but it is more often a question of fact whether delivery was made." 27 Haw. at 566.

In this case, Janet Boteilho executed the deed in question on June 23, 1972. It is evident from her conduct that she intended the conveyance of June 23, 1972, to become presently effective, and that insofar as she was concerned, only the formalities remained to be accomplished. In this regard, the following finding of fact by the trial court is particularly significant:

> In late June or early July, 1972, Janet told plaintiff that *since the land was his* he could collect the rents on Lot 3-B

from the tenant Agabin. Plaintiff commenced to collect such rentals in July, 1972 and has done so since. (Emphasis added)

This finding was predicated upon the testimony of the appellant,[2] who also testified that at about the same time Janet Boteilho told him to have the water meters on the property changed from her name to his, which he did. In June she gave him the tax bill to the property, and this he paid in July, 1972.

Janet Boteilho had left the executed deed with her attorney, and was obviously relying upon him to do whatever remained to be done to give it legal force and effect. Mr. Crockett was clearly of the same impression, for a few days later he wrote a short note to the appellant advising him that his mother had executed the deed in his favor. This note was followed by a statement of charges billing the appellant for the preparation of the deed, as well as for the conveyance tax certificate and recording fees. This bill was promptly paid by the appellant by his bank check, dated July 5, 1972. In billing the appellant, and in receiving and retaining his fee for the drafting of the document and the costs of recordation, Mr. Crockett thereby assumed to act for the appellant for recordation purposes. Mr. Crockett attempted at trial to explain away the fact of billing by claiming that he had not instructed his staff to bill the appellant. Had that been the case, the fee for the preparation of the deed, at least, would have been billed to Janet Boteilho. This was not done. In any event, it is apparent that the members of his staff were either following his express instructions or were simply following

---

[2] The appellant testified:

Q  Did you ever have any conversation with your mother about Agabin?

A  Well, he was paying the rent nicely, and she said just to leave him in there, don't do nothing. And so, she — after the deeds were "drawed" out, —

Q  Hm, m-m-m.

A  — she told me that I could keep the rents from Agabin.

Q  And did you start to keep the rents from Agabin?

A  She wanted to give me from June.

I said, "Mama, no. You can have the rent." So I started to keep the rent from July.

the procedures which he had established for his office.[3] The record is also clear that no directions were given to Mr. Crockett by Janet Boteilho or any of her children, purporting to act for her, to delay the recordation of the document, or to withhold its delivery from the appellant. Under all of these circumstances, we hold that delivery of the deed of June 23, 1972, was in law consummated.

Affirmed in part and reversed in part, and remanded for entry of judgment in accordance with this opinion.

*Richard L. Rost (Frank D. Padgett* with him on the brief) *(Padgett, Greeley & Marumoto,* of counsel) for plaintiff-appellant.

*Steven K. Christensen* for defendants-appellees.

---

[3] At trial, Mr. Crockett testified:

"Well, generally speaking, when the — when the secretary types the deed, she makes out a voucher or a memo, and turns it over to the billing clerk, and she kept it in there, and I suppose she entered it. And also, the majority of the people who have deeds made out, why, they desire to have them recorded. So we also include the five dollars for the recording fees. That's the — just the general practice."